Charles J. Dickgiesser v. Commissioner.
Dickgiesser v. Commissioner
Docket No. 7636.
United States Tax Court
1946 Tax Ct. Memo LEXIS 241; 5 T.C.M. (CCH) 186; T.C.M. (RIA) 46066; March 15, 1946
Charles M. Copeland, Esq., 605 Second National Bank Bldg., New Haven 9, Conn., for the petitioner. J. T. Haslam, Esq., for the respondent. DISNEY *242 Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency of $14,968.69 in income tax for 1941, determined, in fact, by disallowing as a business expense of petitioner, alleged salaries and wages paid in the amount of $23,463.32, to his son. The petitioner alleges in his petition: (1) That such amount represents his son's distributable share of the earnings of a partnership consisting of himself and son; or (2)That such amount constituted reasonable profits and earnings to which the petitioner's son was entitled as a salary. Findings of Fact The petitioner is an individual, residing in Derby, Connecticut, engaged in sheet metal, welding, and machine shop business. The business was originally acquired by petitioner under a gift from his mother in 1904. The business, from 1904 to about the beginning of World War I, was that of plumbing, heating and sheet metal work, from that time to approximately 1936 was sheet metal work entirely, and from 1936 to 1940 it included sheet metal work and welding. In 1940 a machine shop was installed. Average earnings of the petitioner's business for the period from 1904 to 1939 was $25 to $50 per week. *243 Petitioner lost the building in which his business was housed, to his creditors in 1939. The petitioner, an anemic, went to a hospital in 1932 for a check-up and has not been able to do strenous work since that time. About August or September 1939 petitioner had opportunity to bid on a large order of Navy work amounting to about $40,000. Petitioner's previous work had been transacted on a per diem basis from a general contractor. He had had no experience in the kind of bidding or the kind of work which was involved in the Navy order. The estimate for this work was prepared by petitioner and his son, Robert C. Dickgiesser (hereinafter sometimes referred to as "Robert"). Robert's work on the estimate was performed at home at night. At that time Robert was in the employment of the U.S. Rubber Co.
Petitioner received the order for the Navy work, and realizing he could not handle it himself, hired his son Robert for $25 a week. This employment began sometime about September 1939, and continued unchanged to January 1, 1940. Robert had had some business experience in a limited way before and during his college career at Dartmouth College. He had early shown some adaptability to mechanics. *244 After graduating from therein 1939, at the age of about 23, he worked for $25 a week as a time study engineer for the U.S. Rubber Co. until the beginning of employment by his father. His decision to work for his father was based on the fact that his father had an excellent name and an established business, and he, Robert, could be his own boss. For the year 1940 a new arrangement between petitioner and his son was entered into, whereby Robert was to receive $50 a week and 20 per cent of the profits for the year 1940, if business was good. Petitioner's income tax return for the year 1940 was filed showing the deduction of Robert's salary on a 20 per cent plus $50 a week basis, and the deduction was allowed. During the year 1940 the business showed a profit of $8,006.70, of which 20 per cent, or $1,601.34, was to go to Robert, under the arrangement with his father. During that year Robert received as a salary $1,675. Still another arrangement was promulgated by the parties for the year 1941, wherein petitioner and his son Robert were, from January 1, 1941, each to receive a drawing or salary of $100 per week and any profits over and above these amounts were to be divided 60 per cent *245 to petitioner, and 40 per cent to Robert. The new arrangement, called a partnership, was disclosed to the trade by word of mouth, and to the draft board by a written statement March 21, 1941. The accountant for the business was informed of a proposed partnership agreement about February 1941. No written agreement of partnership was ever entered into between petitioner and his son Robert. No partnership return was filed for the year of 1941. No gift tax return was filed for either year, 1940 or 1941. Robert showed adaptability to the business and during the year 1940 gradually drifted into a more responsible position to the point that late in 1940 and during 1941 he was known to some people as a principal of the business, and was authorized to sign checks in the name of Charles J. Dickgiesser & Co., drawn on the firm's bank account. The account had for years been, and continued to be, carried as Charles J. Dickgiesser & Co. Robert's duties during this period included that of purchasing agent, employment manager, engineering staff, plant layout, estimator and placing himself before prospective clients as possible subcontractor. Petitioner filed his income tax return for the year *246 1941 on the accrual basis, in which he reported the income of Charles J. Dickgiesser & Co. in his tax return, claiming as expenses deducted, salaries and wages not included as "Labor," in the amount of $31,734.80, which included $28,663.32. That was the amount which Robert C. Dickgiesser, in his income tax return for 1941, filed on a cash basis, showed as receive by him from salaries and other compensation for personal services. The $28,663.32 was handled by the business in the following manner: $5,200 was paid to Robert during the year of 1941 under the portion of the alleged partnership agreement calling for $100 a week, and $23,463.32, representing the 40 per cent provision in the alleged partnership agreement, was withdrawn by Robert, between April 1, 1942, and September 30, 1942. A Treasury Department Form 1099 was filed by Charles J. Dickgiesser & Co., showing the amount of salary paid to Robert as being $5,200 for "Salaries, Wages, Fees, Commissions, Bonuses." Later, an amended Form 1099 was filed, showing the salary to be $28,663.32. The income tax returns of both the petitioner and his son leave blank line 9, designated "Income (or loss) from partnerships * * *," and Schedule *247 I, provided for returning "Income from Partnerships, Fiduciaries, and other Sources." The son in his return claims $1,400 as a credit for "Earned income" with explanation that the earned income was $14,000, and "Name and address of employer" is given as "Charles J. Dickgiesser & Co., Derby, Connecticut"; while in the return of petitioner, "Name and address of employer" is "Self." On petitioner's return, Schedule H, "Profit (or Loss) from Business or Profession" is filled out; but it is left blank on Robert's return. The petitioner's return is blank in line 1, provided for, "Salaries and other compensation for personal services," while that line in Robert's return shows his entire income, except $45 interest. The petition assigns error on the part of the Commissioner in including in petitioner's income, partnership profits and reasonable earnings of Robert Dickgiesser, in the amount of $23,463.32. On brief, in the alternative, he contends also that the $23,463.32, plus the $5,200 paid as salary, is a reasonable amount for the services of the son, and constructively paid and received within two and one half months from the close of the calendar year; therefore, was a proper deduction *248 for business expense. The respondent allowed the deduction of $5,200, and contends that the $23,463.32 is not a proper deduction as reasonable compensation for services, or as profits of partnership, which he denies existed. Opinion We again consider here, first, a question of reality of a family partnership, contended for by the petitioner, with the attendant effect on division of taxable income. The fact that it is an intra-family matter calls for close scrutiny of the matters and statements involved. P. B. Fouke, 2 B.T.A. 219; James L. Robertson, 20 B.T.A. 112; Doll v. Commissioner, 149 Fed. (2d) 239. We have here a situation involving an old established business, long conducted by the father, expanding suddenly, definitely because of a large contract for work for the Navy; the father, needing assistance, taking his 23-year old son, just out of college and with some mechanical bent, into the business, and later allegedly making him a partner; greatly increased earnings; contribution by the son of services of some considerable value, but no contribution of capital, except that it is contended that about $1,600, earned in 1940, was left *249 in the business; some evidence of notice of a partnership to the trade; no written contract, but testimony of an oral formation of partnership; no partnership return filed; the return of petitioner listing the deduction here sought as for salaries and wages, and the son's return listing the amount involved as "Salaries and other compensation for personal services," also for "Salaries, Wages, Fees, Commissions, Bonuses," with no mention of partnership in either return; no proof of setting up of any capital account; (neither father nor son would state that there was a capital account set up; an accountant had merely been so informed); and no withdrawal of the amount involved within two and one half months of the end of the taxable year. After reviewing all of the facts placed before us, including, but not limited to those just above recited in summary of the situation, we come to the conclusion that a partnership should not be recognized. Not convinced of the reality thereof in the minds of the petitioner or son, we are not convinced that it assumed such a status as to cause division of the income of the business long conducted by the petitioner alone. Though there are statements, *250 self-serving of course, as to the petitioner and son, that the petitioner formed a partnership with his son, the whole evidence in that regard falls short of justifying the conclusion contended for. We can conceive of a loose use of the word partner between father and son as indicating less than the legal relationship indicated by that term, but it is difficult to believe that this legal relationship was actually formed, when no formal written articles or contract was drawn up, and when the return of neither father nor son in any way indicated it, but indicated rather wages or salary paid by father to son. Line 9 of each income tax return, designated "Income (or loss) from partnerships * * *" is left blank in the return of each, as is Schedule I, provided for reporting "Income from Partnerships, Fiduciaries, and other Sources"; and the son in his return claims "Earned income" of $14,000 and credit of $1,400. This is clearly inconsistent with any theory that he was a partner, for partnership income where both labor and capital are involved (the son, it is argued contributed about $1,600) is entitled to be considered earned income only to the extent of 20 per cent, so that, on the $28,663.32 *251 partnership income contended for, only $5,732.66 would be "Earned income" giving credit of $573.27. In other words, $14,000 according to the son's return was earned, not partnership, income. The petitioner in his return gave "Self" as his employer; the son filled the blank for employer's name with "Charles J. Dickgiesser & Co.," all of which indicates that Robert considered the company as his employer, and indicates that Charles J. Dickgiesser considered that he (not the company) was the employer of both. This is not consistent with a partnership entity. We must reasonably consider the dearth of partnership record, and the above inconsistencies in return, together with lack of any partnership return, as of more weight than oral asseverations of partnership. The proof of contribution of capital is vague and uncertain. Though services were rendered, that fact is overcome by the manner of reporting the income therefrom. Though Robert reported his entire income, except $45 from interest on line 1, under "Salaries and other compensation for personal services," the petitioner reported nothing in that space, though under the arrangement contended for, petitioner was like Robert to get $5,200 *252 salary. All this indicates disregard by the petitioner of the oral arrangement alleged. Current treatment is more cogent proof than later interested contention. We conclude and hold that no partnership is recognizable and that the petitioner may not exclude the item of $23,463.32 as paid to a partner. This leaves for consideration the alternative argument that the amount involved is reasonable expense of the petitioner's business. We find no proof of such value to the services rendered by the son. No evidence was adduced as to reasonable value of services such as performed by him. It is clear that payment was not made within two and one half months from the close of the taxable year, and the relationship between father and son is without argument such as to prohibit allowance of losses between them under section 24(b) of the Internal Revenue Code, so that the provisions of section 24 (a) and (c) are fully applicable, and prevent the allowance. Robert's return was made on a cash basis; that of the petitioner on an accrual basis. The two subsections are set forth in the margin. [1] The Commissioner allowed deduction of the $5,200 paid as salary. We may not, on *253 this record, consider whether a higher amount may have been earned by Robert. No error is shown in disallowance of the $23,463.32. *254 Decision will be entered for the respondent. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - * * * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b). (b) Losses from Sales or Exchanges of Property. - (1) Losses disallowed. - In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly - (A) Between members of a family, as defined in paragraph (2) (D).↩