William Weizer v. Commissioner.
Weizer v. Commissioner
Docket No. 6564.
United States Tax Court
1947 Tax Ct. Memo LEXIS 265; 6 T.C.M. (CCH) 337; T.C.M. (RIA) 47080; March 27, 1947
M. R. Schlesinger, Esq., 1108 Public Square Bldg., Cleveland, Ohio, for the petitioner. Cecil H. Haas, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency of $11,109.80 in income tax liability for the year 1941. Petitioner, in his petition to this Court, contests only one of several of the determinations which respondent made. The only issue presented relates to $22,953.50 of the net earnings of a business which was conducted under the firm name William *266 Weizer & Co. Petitioner contends that respondent erred in including the above sum in his net income. Petitioner advances three alternative contentions which are set forth hereinafter. Petitioner filed his return with the collector for the eighteenth district of Ohio. Findings of Fact Petitioner resides in Bellaire, Ohio. His wife is Florence E. Weizer. They were married in 1915. Petitioner was born in Roumania; he came to the United States in 1902 and, thereafter, became a citizen. In 1907 he began a business in Bellaire, Ohio, of buying and selling second hand scrap materials, such as scrap iron, and junk. Bellaire is located in a coal mine district. At that time he had a silent partner who was the cashier of the Dollar Savings Bank. He was a silent partner for about three years. Petitioner adopted the firm name of William Weizer & Co. at the time he had a silent partner. The Company had an account in the Dollar Savings Bank. The firm name has been used ever since. Petitioner developed his scrap iron business from modest origins. He was a poor man, who, in the beginning had as his chief capital a horse and wagon. Petitioner has engaged in the scrap iron business continuously *267 since 1907. When he was married in 1915 his business was worth between $1,500 and $2,000. The gross sales of the business in 1940 and 1941, according to income tax returns, amounted to $106,544 and $137,700; and the net profit amounted to $11,918 and $40,811.86, respectively. The business of William Weizer & Co. is the buying of scrap iron, paper, rags and other second hand scrap metals. The scrap materials are purchased from coal mines, steel mills, general factories, peddlers and small dealers. Petitioner solicits the business and spends most of his time "creating business" and disposing of the materials he purchases. He has regular customers who have sold scrap materials to him during the many years he has been in business, chiefly coal mines. In recent years brass foundries have become new customers. A certain percentage of the business comes to the place of business and is handled by foremen and the office and by telephone. In 1941, petitioner brought in about 60 per cent of the materials purchased through his personal solicitation in making purchases. The material which is purchased is resold in large lots such as 50 tons, 100 tons, or 200 tons, or by the carload. Sales are *268 made by contract. Most of the sales are made to of through brokers and to mills. At times the inventory of scrap materials held by William Weizer & Co. is as large as ten thousand to fifteen thousand dollars. The inventory at the end of 1939, according to income tax returns was $5,050; the purchases during 1940 were $75,849; and the inventory at the end of 1940 was $4,500. The purchases during 1941, according to the income tax return, were $73,992, and the inventory at the end of 1941 was $3,000. The demands for scrap metal materials in 1941 were largely due to war production and prices of scrap materials went up. Profits went up in 1941 as is illustrated by the relationship of cost of sales to profits in 1941 as compared to 1940. Cost of sales in 1940 including labor costs was $88,454, and gross profits amounted to $18,089. Cost of sales in 1941 including labor costs was $90,893, and gross profits amounted to $46,807. The general expenses of operating the business were about the same in both years, $6,171 in 1940, and $5,995 in 1941. The business employs ten or twelve yard men, a foreman, and a girl in the office. The yard men prepare scrap for resale and haul and load materials. *269 The foreman supervises the yard men, and he is responsible to petitioner. The business assets, according to the income tax returns, include a frame office building, two frame warehouses, a frame rag shop, a shear, and a scale. The business was operated at a loss in 1939 of $5,522, according to the 1939 income tax return. A net loss carry-over in the amount of $3,627 was taken on the 1940 return. The business was operated at a loss in 1938 of $14,494, according to the 1938 return. The gross receipts, purchases, inventories, and loss or profit from, sales for 1938, 1939, 1940, and 1941, according to returns, were as follows: 1938
1939
1940
1941
Gross sales
$44,048
$86,125
$106,544
$137,700
Inventory beginning year
3,925
6,050
5,050
4,500
Annual purchases
41,607
70,385
75,849
73,992
Year end inventory
6,050
5,050
4,500
3,000
Cost of sales
58,542
84,200
88,454
90,893
Profit or loss from sales
(14,494)
1,924
18,089
46,807
The assets, liabilities and net worth of William Weizer & Co. as of January 1, 1941, were as follows: ASSETS
Cash in bank accounts
$ 379.30
Accounts receivable
9,669.02
Inventory
4,500.00
Buildings
$4,565
Less reserve for de-
preciation
1,775
2,791.00
Total assets
$16,668.72
LIABILITIES
Accounts payable
$ 3,480.70
Notes payable
12,000.00
Net worth
1,188.02
Total liabilities
$16,668.72
*270 Contracts, orders, statements, letters and checks are made under the name of William Weizer & Co. In 1941 and prior, William Weizer & Co. had its chief bank account in the First National Bank of Bellaire. In 1922, that bank took over the Dollar Savings Bank in a merger, and all accounts in Dollar Savings Bank were brought over to the First National Bank. William Weizer & Co. had a bank account under the firm name with Dollar Savings Bank prior to the merger. Checks drawn on the account with the First National Bank of Bellaire could be signed by petitioner or by his wife, Florence. In 1941, William Weizer & Co. had a small account with Union Savings Bank. Checks on this account could be signed by petitioner, only. Petitioner and his wife, Florence, have a joint savings account in the Bridgeport Savings and Loan Bank in Bellaire. Petitioner has a savings account in his own name only in two banks in Bellaire, Belmont Savings and Loan Bank and Buckeye Savings and Loan Bank. Florence E. Weizer also has a savings account in her own name only in each of the above named banks. When Florence E. Weizer was married to petitioner she had cash savings amounting to $500. She turned over *271 that sum to petitioner. He deposited it in a bank and used it in the business of William Weizer & Co. Mrs. Weizer also owned an insurance or endowment policy in the face amount of $1,000. It became fully paid in 1920 or 1925. The proceeds of the policy, including interest amounted to about $1,100. Mrs. Weizer turned that sum over to petitioner, who deposited it in a bank account and used it in the business. At some time after the two above sums were turned over to petitioner, real estate and securities were purchased in the name of Florence E. Weizer, with funds drawn from the business as follows: A dwelling house and lot on 43rd Street in Bellaire, at a cost of $3,700, and a house in Moundsville, West Virginia, at a cost of $4,000, were purchased in the name of Florence E. Weizer. Stock in Ohio Power Company was also purchased in her name at a cost of $100 a share. Petitioner owns various kinds of property in his individual name. Government bonds and some stock are owned by petitioner and his wife jointly. Petitioner's wife does not own any other property. Petitioner has never made a gift to his wife of any interest in the business or assets of William Weizer & Co. William Weizer *272 & Co. has filed from year to year, including 1941, pay roll reports with the Ohio Bureau of Workmen's Compensation, and such reports state that the name of the employer is "William Weizer d.b.a. William Weizer & Co." It has also made contributions into the Ohio Bureau of Unemployment Compensation as an employer, and the certificate issued by that bureau is made out "Wm. Weizer d.b.a. Wm. Weizer & Co." The certificates issued by the Workmen's Compensation Bureau of Ohio are made out "William Weizer, d.b.a. William Weizer & Company." Petitioner and his wife consulted an attorney named Kenneth G. Cooper, on October 29, 1941, about drafting a written agreement of partnership. He drafted such agreement. It was executed by petitioner and his wife on January 2, 1942. Their signatures were not acknowledged by a notary public. The agreement recites that it was made on January 1, 1941, and that the signatures of the parties were made to the agreement on that date which was contrary to fact. The articles of copartnership provide inter alia that the parties agree "to become co-partners under the firm name and style of Wm. Weizer & Co."; that each partner has "contributed an equal amount to *273 the capital of said partnership"; that the partnership shall commence on January 1, 1941, and shall continue until dissolved; that all profits and losses shall be shared equally by the partners; and that each partner "may draw from the profits of the business such sums as may be mutually agreed upon from time to time." Prior to 1941 and up to the close of 1941 there was no oral or written partnership agreement to conduct the business of William Weizer & Co. as partners between petitioner and Florence E. Weizer. The books of account of William Weizer & Co. have never carried a capital account in the name of Florence E. Weizer, and no capital account in her name appears in the books for the years 1941 and 1942. After the articles of copartnership were executed on January 2, 1942, no changes of accounts were made and there were no changes in the method of keeping the books of the business. A partnership income tax return, Form 1065, was filed in March 1942 for the year 1941 for William Weizer & Co. This was the first partnership return ever filed for the concern. In this return net income of the business in the sum of $42,478.27 was reported, and it was broken down into partners' *274 shares in the amount of $21,239.14 for petitioner and $21,239.13 for Florence E. Weizer. Petitioner and his wife filed separate returns for 1941 in which each reported the above amounts as their respective shares of the income of the business. Petitioner filed a separate individual income tax return for the year 1938. His wife did not file a separate return for 1938. Joint returns in the names of William and Florence E. Weizer were filed for the years 1939 and 1940. Petitioner devoted all of his time to the business, and during 1941 he worked at times from six in the morning until seven or eight o'clock in the evening. He spent only about an hour and a half each day in the office. He opened the office every morning. During 1941, Florence Weizer worked in the office of William Weizer & Co. There was a young woman employed in the office. In 1941, petitioner needed extra help right along and Mrs. Weizer went down to the office to work with petitioner and the office employee. Mrs. Weizer could supervise the office work, dictate letters, attend to telephone calls and do general office work. She did these things. She worked with the employee in the office and supervised some of her *275 work. Sometimes she brought matters from the office home to discuss with petitioner during the evening, and she would give petitioner information about matters that had come up during the day while he was out of the office. Mrs. Weizer also attended to incoming and outgoing correspondence, checked over bills, freight charges, statements and invoices, checks, bank deposits, and pay envelopes. She gave attention to shipping problems. She knew the prices which were being paid for the ordinary materials which were brought in. She could take care of small orders up to one thousand dollars, and routine matters. She worked in the office five or six hours a day during 1941. She was not paid any salary, as such, but she had a personal account on the books of the firm through which she could draw out sums for her needs. Florence Weizer has assisted petitioner in the business by doing office work, as described above, almost from the time she became his wife in 1915, almost every year. She has never been paid a salary, as such, for her work. Florence E. Weizer, prior to her marriage, attended the Duluth Business College, and had business experience in the advertising department of a newspaper. *276 She was in charge of that department. With respect to the personal account on the books of the firm, whenever petitioner or Florence Weizer withdrew any money it was shown in that account. There was no allocation of such withdrawals to either person. Petitioner and his wife have always drawn sums from the business to pay their joint living expenses. The business of William Weizer & Co. was conducted by petitioner as a sole proprietorship during 1941. Florence E. Weizer did not enter into an agreement, oral or written, with petitioner to carry on a business in partnership with petitioner in 1941 or in any prior year, and petitioner did not enter into any agreement with Florence E. Weizer in 1941 or in any prior year to carry on a business in partnership with her. When Florence E. Weizer turned over $500 to petitioner in 1915 and $1,100 in 1920 or 1925 she did not do so under any oral agreement that such amounts represented an investment of her capital which was to remain in the business or which was in consideration for a share in the profits and losses of the business in any ratio, percentage or amount. The services of Florence E. Weizer in the Weizer & Co. business in 1941 were *277 not vital additional services in the production of the income of the business, and she did not substantially contribute to the management and control of the business. Petitioner and his wife did not intend to carry on a business as a partnership in 1941 or before. The firm known as William Weizer & Co. was not a partnership in 1941. Opinion Respondent has determined that the net earnings of William Weizer & Co. for the year 1941 amounted to $44,192.64, and he has held that the entire income from the business conducted by an alleged partnership is taxable to petitioner under section 22(a) of the Internal Revenue Code. Petitioner in his petition alleged that the respondent erred in treating William Weizer & Co. as a sole proprietorship owned by petitioner, rather than as a partnership consisting of petitioner and his wife. He alleged, further, in the alternative, that if respondent was correct in treating the business as a sole proprietorship, then he erred in not allowing as a business expense $22,953.50 as compensation to Florence E. Weizer for her services to the business in 1941. The question to be decided, in its broadest aspect, is whether petitioner *278 is taxable on the entire amount of the earnings for 1941 of the business in question. The burden of proof is upon petitioner. Petitioner, on brief, makes three contentions which are as follows: (1) Mrs. Weizer was a bona fide copartner with the petitioner in William Weizer & Co. during 1941. (2) If, technically, there was no copartnership, Mrs. Weizer had an equitable interest in one-half of the assets and earnings of the business. (3) If neither the first nor the second contention is sustained, then the fair value of Mrs. Weizer's services in 1941 was $22,953.50. Each contention will be given consideration hereinafter. Before taking up each of petitioner's contentions, it is necessary to make some observations about the evidence and the requests of the petitioner for certain findings of fact. The evidence shows that the business in question was a business which petitioner developed through his personal efforts in buying and selling scrap materials of various kinds. Petitioner, before his marriage in 1915, had conducted the business in partnership with a silent partner under the firm name William Weizer & Co. The business was worth between $1,500 and $2,000 prior to and at the *279 time petitioner married. Petitioner so testified but the record provides no amplification of that bare fact. There is no evidence relating to the assets, liabilities and net worth of the business in 1915, nor about the amount of capital used in the business. Coming to the year 1941, the record contains a balance sheet which gives the total assets of the business as $16,668, and the net worth as $1,188. The business had been in existence since 1907, a period of about 34 years to January 1, 1941. The gross sales of the business in 1939 were $86,000, and in 1940 they were $106,544. There is almost no evidence relating to the size of the business, the profits and losses, and the amount of capital, or cash which was required to operate the business in 1915 and in any of the intervening years up to 1941. The evidence indicates that the business was one in which the "inventory" or purchases were "turned over" and sold during each year. There is evidence, also, that during the period from 1915 through 1940, the earnings of the business yielded sums above living expenses which were invested in rental properties and securities. Each person here involved had savings accounts in the individual's *280 name and one joint savings account. There is no evidence relating to the sums in these accounts. Mrs. Weizer testified that she turned over $1,600 to petitioner prior to 1925; and petitioner testified, only, that these sums were deposited in a bank account and were "used in the business." There is evidence that at least $7,700 of earnings of the business was invested in two rental properties prior to 1941, title to which was taken in the name of Florence E. Weizer, and that some stock was purchased in her name. In 1941, there was a personal account in the books of the firm through which both petitioner and Mrs. Weizer withdrew earnings of the business. It may be inferred that such account was in the books during the years before 1941, nothing to the contrary appearing in the record. Petitioner contends that considerable weight should be given to the evidence relating to the fact that Mrs. Weizer at one time had $1,600 of her own funds and that she turned that total amount over to him to use in the business. The first two contentions of petitioner lean heavily upon this item of evidence. It must be observed that petitioner has not introduced any evidence to show what use he made of *281 $1,600 of his wife's funds, $500 of which he received in 1915, and $1,100 of which he received in 1920 or 1925. He has not shown that $1,600 has remained in the business as fixed capital or as working capital, or that no part thereof has not been returned to his wife. To the contrary, the record supports a conclusion that all of such amount has been returned to Mrs. Weizer through purchases of improved real estate and stock which she owns in her own name, the purchases having been made prior to 1941. In this matter, petitioner is unable to rely upon any oral or written agreement made in 1915 or in 1920 or 1925 relating to the use to be made of the $1,600. Since petitioner and Florence E. Weizer were husband and wife, and since they had at least one joint bank account, the advance of money to petitioner by his wife is subject to the careful scrutiny which must be given in tax controversies to the financial arrangements which are made by spouses. Upon careful examination of all of the evidence, a finding of fact can not be made that the capital of William Weizer & Co. in the year 1941 included a contribution of $1,600 from Florence E. Weizer, or that she had an equitable interest in *282 the assets of the business in 1941 to the extent of $1,600. There was no capital account in the books of the business in her name. The evidence suggests strongly that Florence E. Weizer was repaid more than $1,600 from the business prior to 1941. Furthermore, since the business depended upon the personal skill and efforts of the petitioner in buying and selling scrap materials, and since he has expended his personal efforts in the business for about 34 years before the crucial year, it is impossible to ascribe to the use of $1,600 of cash during the early years of the business the importance of its having been a very material factor in the development of the business. Next in importance, petitioner leans heavily upon the allegation of fact that his wife contributed important services to the business during every year since their marriage and in 1941. Petitioner requests findings of fact relating to Mrs. Weizer's services in terms which the record does not justify or support. Again, the importance of her services must be considered in relation to the importance of petitioner's services in the business and with recognition of the fact that a young woman was employed in the office and *283 a foreman and yard men were employed in the yard. The record does not support a finding of fact that in 1941 about 40 per cent of the purchases and gross sales of the business were due to the efforts of Mrs. Weizer. It appears that in 1941, in a business which was 34 years old, a certain amount of the business came to the concern without solicitation from old customers and from those who just came to the yard or telephoned to the firm. The services of Mrs. Weizer are not shown to have been within the class of "vital additional services" or substantial contribution to the control and management of the business within the meaning of the terms used by the Supreme Court in Commissioner v. Tower, 327 U.S. 280, according to our understanding of the reasoning in that case. In the testimony of Mrs. Weizer many topics were touched upon superficially in the description of her services, such as conferences with lawyers and with union officials, and shipping problems without any evidence to show the extent of, frequency of, or importance of the problems. Suffice it to say that the record discloses no incidents of labor or legal problems in 1941 in the business, nor any evidence of *284 any important freight and shipping problems, policy decisions, or such. No doubt Mrs. Weizer's services were very helpful and of value, but the record shows them to have been in the nature of the competent services of an experienced office worker. There is no evidence whatsoever relating to the monetary value of the services of Mrs. Weizer in 1941, or in any prior year. During the period from 1915 through 1941, the external business form of conducting a business in partnership was not evidenced in any way, neither by the books of account of the firm, nor by the filing of records with bureaus and departments of the State of Ohio, nor by the distribution of the profits of the business. It was not until 1942 that any partnership income tax return was filed. At the trial of this case, petitioner in his own testimony did not assert that he had directed a bank where the firm kept its chief account to describe the firm name on a signature card as a partnership. He was asked if he had told the bank to describe the account as a partnership account in 1925, to which question he answered "no." The record strongly suggests that an old account of the concern in the Dollar Savings Bank which *285 was carried during the years when petitioner had a silent partner, was carried over in the records of the bank after a merger in 1922. With respect to a contention that petitioner and his wife had asked an attorney to draft a partnership agreement for them in 1929 or 1930, the evidence is vague and uncertain. Petitioner was asked if he had discussed a partnership agreement with an attorney in 1929 or 1930, to which he replied, "Why, not particularly. I don't recollect of any reason at all." Later he testified, "Yes, we did. He [the attorney] always suggested a partnership." And in this connection, counsel for petitioner stated at the trial as follows: We plan on presenting a perfectly frank case. * * * these parties have not had, prior to 1941, at any rate, a formal oral understanding [about a partnership]. Not even oral. * * * No, we do not claim that there was any written evidence of their understanding prior to very early in 1942. 1. The first question is whether the income which petitioner attributes to his wife as a partner was income from a partnership upon which Mrs. Weizer is liable for tax. A partnership agreement was executed on January 2, 1942, after the end of the *286 taxable year involved in this case. Petitioner's position as to the execution of the agreement is not clearly stated. Our best understanding of petitioner's position is that he and his wife had some kind of "understanding" throughout the period from 1915 to the time an agreement was executed in 1942 that they were conducting the business of William Weizer & Co. as a partnership. This position presents an unorthodox and novel viewpoint because petitioner admitted at the trial that there was no oral agreement of partnership at any time. In describing himself as an employer to bureaus of the State of Ohio, petitioner stated that he was an individual doing business as William Weizer & Co. During 1941 and prior years, he did not file a certificate of registration of a fictitious partnership name, showing that he and his wife were partners as is required in Ohio. Throckmorton's Ohio Code Annotated, (1936) Sections 8099, 8104. He did not keep the accounts of the business in any way which would indicate that the business was conducted by partners in partnership. The contention made is based upon what may be called a marital community of interests expressed by the spouses as "our business" *287 in which the wife did not consider herself an employee when she helped her husband in the office of the business being conducted under his management, but "considered" herself as a "partner." Hence, when a written agreement was executed in 1942 it appears to be the view of the parties that it did not represent a contract creating a partnership but that it was a confirmation of a status of some sort which petitioner and his wife liked to think had existed over many years. Nothing occurred in 1941 or 1942, as the parties must admit, to occasion the execution of articles of copartnership. The wife made no contribution of capital to the business in 1941 or 1942; there were no changes in the operation of the business; there was no business purpose in executing the written agreement; there was no conclusion of an existing business enterprise and the beginning of a new one. It purported to be a legal document executed on January 1, 1941, which was not true. It purported to create interests of the parties in a business enterprise which was to have its inception coincident to the date of the contract which petitioner disavows by his view that no business enterprise or venture came into being *288 with the contract. It would appear that the petitioner does not rely very seriously upon the articles of copartnership in his contention that a partnership existed in 1941. The only holding which can be made with respect to the written agreement which was executed on January 2, 1942 is that it is not evidence of the existence of a partnership consisting of petitioner and his wife during the year 1941. See Max German, 2 T.C. 474, 481, where the execution of a partnership agreement on January 2, 1940, was ineffective to support the contention of the taxpayer that a partnership consisting of himself existed in the year 1939; and Francis Doll, 2 T.C. 276; aff'd 149 Fed. (2d) 239, where a partnership agreement executed on December 15, 1932 was ineffective with respect to the tax liability of the taxpayer for the years 1937 to 1939, inclusive. The petitioner evidently has offered the written agreement to show that he and his wife had "considered" themselves to be partners conducting a business in partnership in 1941 and before. The agreement does not give support to that argument by any of its terms or by the facts about the execution date thereof. *289 At the trial of this case, counsel for petitioner admitting that there was no oral agreement of partnership in 1941 and before between petitioner and his wife, argued that it was material to show that petitioner's wife had some "understanding" with petitioner as to her relation to the business. The following question was asked by counsel for the petitioner: Question: Did you have an understanding with your husband at any time as to your relation in this business? Counsel for the respondent objected to the question as follows: The counsel just admitted that there wasn't any oral agreement of any kind. Therefore, I can't understand how there could be an understanding on this proposition. The ruling of the Court on this objection was that the objection was sustained. Petitioner presses the argument on brief. The argument is without merit that a partnership existed in 1941 and before. A partnership is a contractual relationship. Carnie-Goudie Manufacturing Co., 24 B.T.A. 679, 683, 684. It is now generally held that a partnership can not be formed solely by operation of law. Alger Melton, 7 B.T.A. 717. A partnership is a relation arising out of a *290 contract to do certain things. Citizens National Bank of Chickasaw, 24 Okla. 408; 103 Pac. 720. "It is one of the chief characteristics of a partnership that it is created only by the voluntary contract of the parties and that as between the parties it does not arise in any case by operation of law." Roe Stephens Manufacturing Co., 12 B.T.A. 1254. "Persons can not become partners except by agreement, expressed or implied * * *." Roe Stephens Manufacturing Co., supra.Petitioner admits that there was no expressed agreement oral or written in 1941 or in any prior year. Petitioner, while not stating so definitely, must be contending that the partnership contract can be implied. Petitioner contends that a contract of partnership can be implied because his wife turned over $1,600 to him in 1915 and 1920 or 1925. There is no evidence that he has not returned $1,600 to his wife. There is no evidence that she turned over such sum to him in consideration for his giving her a one-half interest in the established business or in a new venture to be established with her making a contribution to capital. Accordingly, it is not possible to make *291 a finding of fact that Mrs. Weizer contributed $1,600 to the capital of William Weizer & Co. See I. J. Adelson, 7 B.T.A. 110. As between strangers, in a business transaction, it is highly unlikely that a person would invest money in a business with the intention of acquiring an interest in the business without a clear agreement as to the ownership of capital or of some property interest to be acquired in consideration for the contribution of capital. P. B. Fouke, 2 B.T.A. 219, 221. Cf. R. A. Bartley, 4 B.T.A. 874. To support the claim that a husband and wife are taxable as partners upon the profits of a business there must be more than selfserving statements that a partnership existed or was intended to exist. James L. Robertson, 20 B.T.A. 112. There must be credible evidence demonstrating the alleged partner's assumption of the legal responsibilities which are those of a partner under law, among other things. W. M. Buchanan, 20 B.T.A. 210. "The existence of a partnership is often so problematical and difficult to determine that the statement by the ordinary individual as to its existence amounts to a mere legal *292 conclusion and is entitled to little weight." W. M. Buchanan, supra.Such a conclusion, it is the function of this Court to draw from evidence of sufficient primary facts to demonstrate that a partnership $ exists. Wifely assistance to a husband in a business he manages and controls does not alone establish the carrying on of a business in partnership. A. Penziner v. United States, 54 Fed. Supp. 842. While there is no evidence here that petitioner and his wife shared the profits of the business regularly in any agreed percentage or ratio, the mere sharing of profits of a business is not sufficient to establish a relationship of partnership. J. Howard Coombs, 20 B.T.A. 1021, 1025. The evidence here fails to establish any agreement to share the losses of the business, or that a relation of mutual agency existed between the parties, or that the petitioner's wife had any authority to act, or did act, in the name of a partnership. J. Howard Coombs, supra.There is no evidence that petitioner made any arrangement in 1941 or in prior years with his wife by which he divested himself of control over any part of the income of the business in *293 question. Frank J. Lorenz, 3 T.C. 746; aff'd, 148 Fed. (2d) 527. Petitioner places reliance upon Commissioner v. Tower, supra, in his contention that his wife contributed capital of her own to the business and services alleged to be vital and substantial in the management and control of the business. The view expressed by the Supreme Court in the Tower case in terms which represent the statement of a rule, with respect to the contribution of capital or services or both, can not be said to have been intended to eliminate the primary prerequisite of a contract of partnership between a husband and wife. Without the existence of a contract between the parties, the contribution of money, if there is any, and the giving of services, if that is done, by a spouse in a business controlled by the other spouse, is not a factor which is determinative of the question. The contractual relationship of a partnership must exist, and if it does, then that which was set forth by the Supreme Court in the Tower case, can be applied effectively in the determination of such question as is in issue here. Otherwise, not. See W. M. Buchanan, supra. There *294 is a further element in this case which requires comment. The rule that income earned by one person is taxable to him only, Lucas v. Earl, 281 U.S. 111, requires examination of the source of the income which is to be taxed. The business in question was a buying and selling business and the personal efforts and skill of petitioner must have been the chief generating source of the income to be taxed. See Mead v. Commissioner, 131 Fed. (2d) 323; certiorari denied, 318 U.S. 777; Francis Doll, supra; Schroder v. Commissioner, 134 Fed. (2d) 346; and William G. Harvey, 6 T.C. 653. It is alleged that petitioner's wife made some purchases and sales in 1941, but there is no evidence of any specific transactions nor of the amounts of any of such alleged purchases and sales of materials. The evidence does not show that a partnership consisting of petitioner and his wife existed in 1941 or in any prior year, under which the business in question was conducted. See Edwin F. Sandberg, 8 T.C. 423 (February 27, 1947). It is held, therefore, that no partnership existed. The first contention of petitioner is rejected. *295 The evidence does not support a holding that there was an implied contract of partnership. It appears that the sole purpose of an alleged partnership in 1941 was to reduce the income tax burden of the petitioner. That being so, petitioner must be held to strict compliance with the burden of proof upon which requires that he prove that the respondent's determination is in error. The second contention of petitioner is that his wife owned an equitable interest in one-half of the assets and earnings of the business. While petitioner does not so state on brief, this general contention must be based on an underlying contention that petitioner's wife had capital in the business, either as a result of having advanced cash to the business or as a result of having left sums in the business which would have gone to her otherwise as earnings in compensation for her services in past years. He relies upon the cases of Max German, supra; Berkowitz v. Commissioner, 108 Fed. (2d) 319; and Richardson v. Helvering, 80 Fed. (2d) 548. The conclusion was made in Max German, under the particular facts, that Mrs. German had contributed a portion of the capital used *296 in the ham business from which the income in the taxable year was derived. After reaching that conclusion, the next question was what portion of the income for the taxable year was attributable to Mrs. German's capital. The facts in the Max German case differ from the facts here. We need not point out the differences in facts, other than to point out that in that case the facts supported the following conclusions stated at pages 481 and 483 of the report: It is perfectly clear that the capital of the ham business came from and represented profits derived from the fruit and vegetable business, probably the delicatessen, and from prior operation of the ham business itself. If therefore it may be said that Rose German, as part earner of those profits, was the owner of a share of the profits which remained in and provided substance for the business as it existed in the taxable year, then certainly Rose German was a contributor to the capital vested and risked in the enterprise. See and compare Berkowitz v. Commissioner, 108 Fed. (2d) 319, and Richardson v. Helvering, 80 Fed. (2d) 548. And, being a contributor with her husband to the enterprise wherein they stood *297 to win or lose together, it would appear, under Champlin v. Commissioner, 71 Fed. (2d) 23, that she would be entitled to a proportionate share of the profits. * * *
From the above, we think it follows that to the extent the earlier profits, which made up or constituted the capital of the ham business, represented the separate earnings of Rose German she was a contributor to the capital of the enterprise and to the extent the 1939 profits are attributable to the capital so contributed by her they are her profits and not those of the petitioner. In this case, when petitioner married in 1915, he had an established business, though a small one. The evidence relating to the work done by petitioner's wife in the office of the business in early years, after the marriage, is fragmentary and lacks required definite detail. There is no evidence relating to the earnings of the business in prior years. Petitioner's wife stated that she has never received compensation for her services, but the record shows that she was permitted to make withdrawals from the business through a personal account. She admits that she made such withdrawals. We can not assume that during 25 years *298 petitioner's business did not make profits. For example, the year 1941 was a war year bringing increased profits to the business. What of the years of World War I? The profits of the business in earlier years may have been large or small, losses may or may not have absorbed some of the earlier profits, and profits may or may not have remained in the business, but the record reveals no facts about these matters. Petitioner's wife has testified that she worked in the business "almost every year" after her marriage, (tr. p. 16), but the record does not show what years she worked in the business and what years she did not. There was a personal account on the books of the concern through which petitioner and his wife withdrew funds, but the record does not show how much these withdrawals were over the years or even in 1941, or how much each person withdrew. The record shows that some of the funds withdrawn were used to purchase property, some in petitioner's name, some in his wife's name, and some in their joint names. In such situation, lacking very material evidence, petitioner's contention that earnings of his wife and cash advanced by her remained in the business over a period of twenty-five *299 years, from 1915 to 1940, inclusive, and that such became capital in the business productive of income in 1941, the taxable year, constitutes advancement of a theory and mere argument unsupported by facts. The balance sheet of the business as of January 1, 1941, gives little support to petitioner's contention. It shows liquid assets consisting of cash, accounts receivable and inventory totalling $14,548.32, and liabilities consisting of accounts and notes payable totalling $15,480.70. It shows fixed assets which seem to be carried on the books at a cost of $4,565. This balance sheet does not show very much accumulated invested capital or working capital in the business at the beginning of 1941. Also, the record does not show how title is held to the buildings and fixed assets of $4,565, whether held jointly or in petitioner's name only, nor the source of the funds used to acquire the buildings, nor any indication of the application of any "earnings" of petitioner's wife to the acquisition. Comparing the facts in the Richardson case to the facts here, there is not a similarity of facts at all, for there property was held jointly pursuant to a definite agreement of a husband and wife. *300 In the Berkowitz case, it was said that while a wife's right to her "earnings" in and about her husband's business is now recognized, "Her right to those earnings, must rest, however, in contract," and the case was remanded to the Board of Tax Appeals to "determine the existence or non-existence of a profit-sharing agreement." The Richardson and Berkowitz cases provide rules which might aid petitioner's contention here, but without certain evidence those cases help very slightly in the solution of the problem here. Those cases and Champlin v. Commissioner, 71 Fed. (2d) 23, admonish us to analyze the record of this case carefully and to avoid certain errors, as for example, to look further if a partnership is not found to exist, as has been found under the first question presented. But receiving such admonition from the law books and from the alternative contentions in the petitioner's brief, we are confronted by the equally well established principal that each case stands upon its own facts. Giving further consideration to the Max German case, it is not possible on the record of this case to conclude that much which was said in the Max German case can be said with equal *301 propriety in this case. See p. 479 of the report in Max German where we said: We would be unable to say on the record before us that the petitioner worked any harder or more effectively than his wife in the fruit and vegetable business, or in the ham business * * *, and it is certainly from the fruits of those early efforts that the ham business as it existed thereafter and during the taxable year derived much of its substance. In this case, the record indicates that petitioner created the business going to mines, mills, factories and about the country to get scrap materials, and locating buyers of such stuff who would take it in large lots. Such work was not done by his wife. We would have to conclude here that from as much as we know of the 25 years of the business before 1941, petitioner worked harder and more effectively than his wife and that the earnings of the business in prior years resulted more from his than from her efforts. And so, finally, it must be concluded that petitioner's evidence does not bring this case within the rule or holding of Max German. First, we can not conclude with any degree of certainty that petitioner's wife contributed capital to the enterprise *302 through cash of her own and through earnings which she left in the business. If we assumed for purposes of argument that she did contribute some capital by the above mentioned methods, then we should have to make a determination of how much capital she contributed in order to make the ultimate determination of what proportion of the earnings in the taxable year were properly attributable thereto. Petitioner contends that one-half of the earnings in the taxable year are attributable to himself and one-half to his wife. We could not on the present record sustain that contention. We made an allocation of 75 per cent and 25 per cent of earnings to the husband and wife, respectively, in the Max German case. Unfortunately we could not make any approximation of the proportions for a fair allocation of earnings here. The third contention of petitioner is that a deduction in the amount of $22,953.50 should be allowed in computing the net income of the business as compensation to his wife for her services which, it is alleged, were worth $22,953.50. If petitioner's wife had contracted with him for payment of reasonable compensation for her services, under Ohio statute she would have been *303 entitled to recover reasonable compensation. See section 7999 of the Ohio General Code which provides that a husband and wife may enter into any agreement or transaction with the other which either might if unmarried. Shafer v. Shafer, 30 Ohio App. 298; 163 N.E. 507; Bechtol v. Ewing, Adm'r, 89 Ohio Stat. 53; 105 N.E. 72. In the Max German case we noted that under Missouri statute a married woman may carry on and transact business and enter into a contract as a feme sole. However, there was no issue in that case raising any question of an employer-employee relation between her and her husband, or of the right of her husband to deduct any amount as compensation paid or incurred by him for services rendered by the wife in the business. In this case, there was no agreement for the payment of compensation to the wife. But we think that on a quantum meruit basis she was entitled to compensation for her services in the taxable year 1941. She worked in the office of the business five or six hours a day. While the evidence relating to her work is of a sketchy and superficial nature, it has been shown that petitioner's wife performed useful *304 services and gave her time. Petitioner, in his petition, made claim for an allowance of $22,953.50 as an expense of the business as compensation to Florence Weizer for her services in 1941. He raised an issue upon which he had the burden of proof. But he presented no evidence whatsoever to establish the value of Mrs. Weizer's services in 1941. There is nothing by which we can determine the fair value to the business of her services. Respondent on brief contends that the claimed amount of compensation, $22,953.50, is "exorbitant." In the absence of proof, we can not "do equity" to petitioner by way of allowing some amount. Accordingly, for failure of proof, the claim for a business expense deduction is denied. The income of William Weizer & Co. was reported on the cash basis. Respondent points out, under this question, that the prohibitions of section 24 (c) of the Internal Revenue Code must be considered in connection with the alternative claim of petitioner for a business expense deduction. It is noted, therefore, that there is no evidence that the sum of $22,953.50 was paid to Florence Weizer within the taxable year 1941 or within two and one-half months after *305 the close thereof. See also subsection (3) of section 24 (c). The holdings made above are for the respondent. We do not observe that the pleadings show any necessity for a Rule 50 recomputation. Decision will be entered for the respondent.