AMERICAN FOUNDRY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10497. Promulgated April 13, 1928.

*John A. Selby, Esq.*, and *Lawrence A. Baker, Esq.*, for the petitioner.

*J. L. Backstrom, Esq.*, for the respondent.

OPINION.

SMITH: Two questions are presented by this proceeding: (1) The right of the petitioner to deduct from gross income of the fiscal year ended June 30, 1920, $94,619.03 charged off as a bad debt, which amount represented an indebtedness to it of the Maxwell Motor Co. of Detroit, Mich.; and (2) whether the respondent failed to employ proper comparatives in the computation of the excess profits tax for the fiscal year ended June 30, 1920, in accordance with the requirements of section 328 of the Revenue Act of 1918. At the hearing of this case the petitioner waived the second point provided the Board should hold that it was entitled to deduct from the gross income of the fiscal year ended June 30, 1920, the full amount of the alleged bad debt charged off. It was the ruling of the Board that if the disallowance of the bad debt deduction was confirmed by the Board, the petitioner should have the right to a further hearing with respect to comparatives.

Section 234 (a) of the Revenue Act of 1918 provides in part:

That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(5) Debts ascertained to be worthless and charged off within the taxable year.

The evidence of record shows that the petitioner failed to receive prompt remittances from the Maxwell Motor Co. beginning in April, 1920. The capital stock of the petitioner was pledged to the Fletcher American National Bank of Indianapolis as security for advances made to the petitioner. The bank kept in close touch with the operations of the petitioner and controlled the board of directors. The experience of the bank had been that automobile manufacturers which had large inventories and which could not move them were

poor risks. Officials of the petitioner had gone to Detroit to determine the status of the Maxwell Motor Co. They found that the company was making a few sales of its product from April to June, 1920; that where the company had shipped cars to dealers with sight drafts attached to the bills of lading, the cars were being returned to the company in large quantities. They also found that although the company had large assets there was included among such assets an item of patents and good will of approximately $25,000,000. Creditors were clamoring for payment and the Maxwell Motor Co. did not have the cash with which to pay the creditors. When these facts were communicated to the board of directors of the petitioner the board of directors authorized the charge-off as a bad debt as of June 30, 1920, of $94,619.03. Subsequent events showed that the Maxwell Motor Co. was in a better financial condition than the officers of the petitioner believed to be the case. Under date of August 28, 1920, the Chase Securities Corporation addressed a letter to the Fletcher American National Bank reading in part as follows:

The latest figures submitted by the Company [Maxwell Motor Co.] show current assets, including inventories but excluding all good will items, exceeding current liabilities of more than $20,000,000. We are of the opinion, however, that rather than consider the sacrifice of inventories to enforced liquidation, it will be wise to extend a part of the Company's existing obligations provided a comprehensive plan can be effected for the continuance of its business under favorable conditions.

The letter also stated that Walter P. Chrysler, lately vice president of the General Motors Co., was to become associated with the Maxwell Motor Co.

A creditor's belief that a debtor is in bad financial condition is not evidence of worthlessness. *Akron Auto Garage Co.*, 1 B. T. A. 1066. In *Steele Cotton Mills Co.*, 1 B. T. A. 299, we stated:

Under the provisions of this section [section 234(a)(5)] two events must have occurred before the taxpayer was entitled to write off the balance due from the Piedmont Commission Co. as bad debt, viz: (1) The debt must have been *ascertained* to be worthless, and (2) it must have been charged off within the taxable year. * * *

The word *ascertain* has a definite and common meaning, both in law and in ordinary usage, i. e., "To make certain to the mind; to make sure of; to determine." * * *

* * * Before a taxpayer is entitled to take a deduction for a "debt ascertained to be worthless," he must take reasonable steps to determine that there is no probability of payment or collection and have prima facie evidence to prove that the debt has *no* value. Under the facts shown in this appeal, the time was too limited and the endeavor too restricted for us to consider that the taxpayer had thoroughly investigated the resources of the Piedmont Commission Co. or that sufficient effort had been made to *make sure* that the compromise agreement would not be fulfilled or that the company could not or would not pay. This taxpayer has not made a showing which would entitle it to consideration under this test, and its first contention must be denied.

The evidence in the case at bar does not in our opinion show an ascertainment of worthlessness by the petitioner of the debt due it from the Maxwell Motor Co. We may well believe that the petitioner had a serious doubt as to whether the amount owing to it by the Maxwell Motor Co. would ever be collected in full. We are persuaded, however, that the petitioner had no reasonable ground for believing that the account would not at least be collected in part. The Maxwell Motor Co. had large assets, as shown by the letter received by the petitioner from the Chase Securities Corporation under date of August 28, 1920. The fact that the Maxwell Motor Co. was doing a very large business was clearly apparent to the petitioner which was manufacturing most of the castings used by it. The charge-off made by the petitioner was apparently made through an abundance of caution and not as a result of an ascertainment of worthlessness. The disallowance by the respondent of a bad debt deduction is sustained.

An order will be entered restoring this proceeding to the General Calendar for hearing under Rule 62 of the Board as to proper comparatives for the determination of tax liability under section 328 of the Revenue Act of 1918.