Matthew Edwards, Sr. v. Commissioner.
Edwards v. Commissioner
Docket No. 61950.
United States Tax Court
T.C. Memo 1959-150; 1959 Tax Ct. Memo LEXIS 98; 18 T.C.M. (CCH) 645; T.C.M. (RIA) 59150; July 21, 1959
*98 Petitioner, in 1953, took a nonbusiness bad debt deduction arising out of a series of advancements made to his son-in-law in prior years. Held, a valid debt was created but petitioner did not meet his burden of proof to show that the debt actually became worthless in 1953. H. S. Life, Esq., Iowa Trust & Savings Bank Building, Oskaloosa, Ia., for the petitioner. Emory L. Langdon, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in petitioner's income tax for the years 1953 and 1954 in the respective amounts of $220.19 and $244.50. The only question in the case is whether certain transactions between petitioner and his son-in-law created a debt in favor of petitioner in the amount of $3,635.85 and if so, whether the debt became worthless in the year 1953. Findings of Fact Matthew Edwards, Sr., hereinafter referred to as petitioner, resides on a farm near Oskaloosa, Iowa, and is engaged in small scale farming and mining enterprises He filed timely income tax returns for the years 1953 and 1954 with the district director of internal revenue at Des Moines, Iowa. From 1947 *99 to 1951, petitioner on several occasions advanced various sums of money to his son-in-law, Edward H. Vallandingham. During the period in which the advances in question were made and until the fall of 1953, Vallandingham, his wife and their children lived in a separate house on petitioner's farm. Under an informal agreement with petitioner, Vallandingham used a portion of the farm for raising livestock and crops. From time to time as petitioner advanced various sums to Vallandingham he recorded the amount and the date on a page in a looseleaf notebook. There was also a demand promissory note signed by Vallandingham and his wife in the sum of $1,700, dated April 20, 1951, with "no" interest which represented a portion of the advancements. The balance of the advancements, including the note obligation, amounted to $3,635.85 in 1953. At the time the advances were made no specific date was set for repayment, but during the period of time covered by the advances Vallandingham made repayments totaling at least $400. In the fall of 1953, at petitioner's request, Vallandingham and his family left the farm and moved to a home he bought on contract in Freemont, Iowa. At the time Vallandingham *100 left the farm he was not advised of any amount due petitioner for the advances which had been made and until shortly before trial of the case in 1959, Vallandingham was unaware of the total amount involved. Petitioner did not approach Vallandingham to demand repayment but he had spoken to Vallandingham's wife (petitioner's daughter) frequently about it. Vallandingham augemented his income from farming operations with a series of jobs in nearby mines or factories. In 1951 he purchased an automobile from petitioner for $1,600 and paid for it in full at the rate of $25 per week. In 1953, because drought and disease had crippled his farming operations and because of other financial reverses, Vallandingham was not in a good financial situation, but during said year he was making payments on various debts owed other creditors. Petitioner did not undertake legal action to attempt collection. In 1953 he sought the advice of his attorney concerning the possibility of collecting the amount of the advancements. The attorney's opinion was that petitioner could at best recover $150 if suit were brought. On the basis of the advice received and on his own assessment of his son-in-law's straitened *101 financial circumstances petitioner decided that the debt was uncollectible. In his income tax return for the year 1953 petitioner listed the total of his advances to Vallandingham in the sum of $3,635.85 as a loan which had become worthless in the year 1953 and claimed deductions resulting from the loan as a nonbusiness bad debt on his income tax return for the year 1953 and as a capital loss carryover for the year 1954. Respondent disallowed these deductions, stating in the notice of deficiency for the year 1953 that the disallowance was made because: "it has not been established that such debt became worthless during the year 1953, and because the basis of the debt has not been substantiated." Opinion The issue is whether the advancements in question created a debt in favor of petitioner in the amount of $3,635.85 and if a debt was created whether it met the tests for a nonbusiness bad debt deduction under section 23(k)(4) [1] of the Internal Revenue Code of 1939[2] by becoming worthless in the taxable year 1953. *102 Whether an advancement is a debt or a gift depends upon the intent of the parties. If there was a present intent to create a debtor-creditor relationship the advancement constitutes a debt. Without making an extended review of the evidence in this case, we feel it sufficient to establish the debtorcreditor relationship with respect to the advancements made by petitioner. It is true that all inter-family transactions should be carefully scrutinized. However, here respondent's own witness, Vallandingham, testified flatly that the advancements were debts. And there are present other factors, such as the giving of the note by Vallandingham which petitioner said represented part of the advancements and the repayment by Vallandingham of some $400 of the advancements. Upon the whole record we are convinced the loan to Vallandingham was established. The exact amount of the debt is a little vague in the record. But it was petitioner's testimony that the balance in 1953 of all of his advancements was the sum of $3,635.85, and no one, including respondent's witness, Vallandingham, testified it was less. In fact, Vallandingham said he "acknowledged" this debt. We hold the debt in that sum was *103 established. In order for petitioner to deduct the amount as a nonbusiness bad debt in 1953 he had to establish that the debt became worthless in that year. Frank J. Shippen, 30 T.C. 716. We feel petitioner failed to carry his burden of showing the debt became uncollectible in 1953. About all that is shown with respect to the debt becoming worthless in 1953 is that the debtor had bad luck with his stock and his crop that year and, at petitioner's request, moved from petitioner's farm; that petitioner concluded the debt was worthless that year; and, during said year, petitioner consulted an attorney who told him the debt was uncollectible. The record shows that much of the debtor's income during 1953 and prior years was derived from his work in mines and factories. Moreover, it appears that the debtor moved in 1953 to Freemont to a home that he had purchased on contract in August or September of that year, and he resumed farming in 1954 on a leased farm. At the time he resumed farming in the spring of 1954, he procured a $5,000 secured loan from the Farmers Home Administration which was secured by the machinery and equipment that he took onto the farm, the crop raised *104 on the farm, and the purchases of stock and equipment made with the proceeds of the loan. Worthlessness of a farmer's debt is not necessarily established by evidence that he had a bad year with his stock and crops. This is especially true when the record shows he continued in the farming business. Cf. Frank J. Shippen, supra; Trinco Industries, Inc., 22 T.C. 959. The circumstances of the debtor purchasing a home that year and his securing a $5,000 loan in the spring of 1954 indicate some or all of petitioner's loan might well have been collectible in 1953 if petitioner had pressed for collection. The evidence does not establish the debtor was insolvent in 1953. It does show he had other creditors and it shows he was paying off other creditors in 1953 and 1954. Petitioner made no demand to Vallandingham for payment in the year 1953 or any prior year though he did speak to his daughter, Vallandingham's wife, about it. While a demand for payment, to establish worthlessness, might not be necessary, if other evidence would show the uselessness of such demand, we cannot say under this record such a demand would be useless. About the only other evidence of *105 worthlessness is petitioner's testimony where he recounted his son-in-law's bad luck with stock and crops in 1953 and added: "it became evident to me that I wouldn't get it [the debt] back." This self-ascertainment of worthlessness is totally inadequate to establish the worthlessness of the debt in 1953. Earl V. Perry, 22 T.C. 968; American Foundry Co., 11 B.T.A. 575. We have earlier pointed out that the basis on which petitioner's determination of worthlessness rested: a bad year for farming, would not support the conclusion that the debt lost its value that year. In 1953 petitioner consulted with his attorney about the collectibility of the loan. It was his testimony that the attorney told him he could probably collect about $150 of the loan if he sued. There is no evidence of any investigation of the financial condition of the debtor by the attorney, and no evidence of the facts upon which the attorney based his conclusion that the debt was practically worthless. The evidence was insufficient to show worthlessness of the debt in 1953. James L. Robertson, 20 B.T.A. 112. It fairly appears from the whole record in this case that, while *106 the advancements were to be considered loans, they were prompted by a desire to help the son-in-law, who, petitioner knew, did not have sufficient liquid assets to discharge the debts. They were loans made to a large extent in reliance upon the good character and honesty of the son-in-law, who worked hard to support his wife and six children. Petitioner testified how hard his son-in-law worked: "It seemed like he was working all of the time, day and night almost * * * he goes about 24 hours a day. I don't see how he does it." At the trial the son-in-law testified he had paid off his other creditors and he was willing to pay off his debt to his father-in-law. The record rather indicates commendable forbearance on the part of petitioner in the tax year when the husband of his daughter had had a bad year on the farm. The existence of a family relationship between the debtor and creditor is a factor to consider in deciding whether a debt became worthless. In Thom v. Burnet, 55 Fed. (2d) 1039, affirming sub nom. Charles J. Bell, Executor, 17 B.T.A. 1185, it was held the taxpayer's advancements to his son-in-law constituted debts which might be of "doubtful value *107 and difficult of collection" but in the absence of any effort to enforce payment there was no basis for holding the loan worthless. In the course of the opinion, it is stated: "But where the taxpayer, because of family ties or personal relations between himself and his debtor, is not willing to enforce payment of his debt, in whole or in part, he is not thereby entitled to deduct it from his income tax as worthless." Under the whole record, we are convinced petitioner failed to established worthlessness of the debt in the taxable year. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - * * *
(4) Non-Business Debts. - * * * if a nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. * * * ↩
2. All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.↩